**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **BILLY D. ALVERSON,** | ) | |
| | ) | |
| **Petitioner** | ) | |
| | ) | |
| vs. | ) | No. 00-CV-528-TCK-SAJ |
| | ) | |
| **MARTY SIRMONS, Warden** | ) | |
| **of the Oklahoma State Penitentiary,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

Before the Court is the amended petition[1] for a writ of habeas corpus (Dkt. # 12) filed by
Oklahoma death row inmate Billy D. Alverson, pursuant to 28 U.S.C. § 2254. Petitioner, who
appears through counsel, challenges his conviction and sentence in Tulsa County District Court Case
No. CRF-95-1024.[2] Respondent filed a response to the amended petition denying its allegations
(Dkt. # 14), and Petitioner filed a reply (Dkt. # 15). For the reasons discussed below, the Court finds
the amended petition should be denied.

As a preliminary matter the Court notes that Marty Sirmons is now the Warden at Oklahoma
State Penitentiary. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court finds
that Marty Sirmons is the proper substituted Respondent and the Court Clerk shall be directed to
note such substitution on the record.

The Court has reviewed: (1) the amended petition for writ of habeas corpus, the response to
the amended petition, and the reply to the response; (2) the supplemental authorities provided by

---

[1] A preliminary petition was filed on January 9, 2001 (Dkt. # 11), followed by the amended
petition on January 31, 2001 (Dkt. # 12).

[2] In some state court records this case is referred to as CF-95-1024.

Petitioner; (3) transcripts of the motion hearing held on February 28, 1996, motion hearing held on

October 30,1996, motion hearing held on April 29, 1997, *in camera* motion hearing and jury pool

proceedings held on May 5, 1997 in front of Alverson jury pool only,  motion hearing held on May

12, 1997 (two volumes),  *voir dire* of Alverson jury on May 9, 12, 1997 (two volumes); (3)

transcript of the first stage of jury trial proceedings, held May 13-16, 1997 (six volumes); (4)

transcript of the second stage of the jury trial proceedings held May 19-21, 1997 (three volumes);

(5) all documents and exhibits (photographs of certain items of physical evidence submitted in lieu

of actual items) admitted in jury trial proceedings, including two audio tapes and three video tape

exhibits; (6) transcript of the sentencing proceedings held on July 11, 1997; (7) Original Record

(O.R.) in Tulsa County Case No. CF-95-1024, Volumes I, II and III; and (8) all records before the

Oklahoma Court of Criminal Appeals which were transmitted to this Court as verified by the parties

(Dkt. # 16).

## BACKGROUND

### I.    Factual Background

Petitioner and three co-defendants were charged and convicted of the February 26, 1995,

brutal killing of QuikTrip employee, Richard K. Yost. Pursuant to 28 U.S.C. § 2254(e)(1), the

historical facts as found by the state court are presumed correct. For the purposes of consideration

of the issues presented in the petition, the Court relies upon the following synopsis from the

Oklahoma Court of Criminal Appeals ("OCCA") in that court's direct appeal opinion. Following

review of the record, trial transcripts, and admitted exhibits, the Court finds this summary by the

OCCA is adequate and accurate. Therefore, the Court adopts the following summary as its own.[3]

> Alverson's co-defendant, Michael Wilson, worked at the QuikTrip convenience store located at 215 N. Garnett Road in Tulsa, Oklahoma. Wilson, Alverson, and two of their friends, Richard Harjo and Darwin Brown, went to the QuikTrip during the early morning hours of February 26, 1995. They chatted with Richard Yost, the night clerk, until the most opportune time arose for them to accost him and force him into the back cooler. They handcuffed him and tied his legs with duct tape. Alverson and Harjo went outside and returned with Harjo carrying a baseball bat.
>
> Yost was found beaten to death in a pool of blood, beer and milk. Part of a broken set of handcuffs was found near his right hip. The medical examiner found a pin from these handcuffs embedded in Yost's skull during the autopsy. Two safes containing over $30,000.00 were stolen, as well as all the money from the cash register and the store's surveillance videotape. All four defendants were arrested later that same day wearing new tennis shoes and carrying wads of cash. The stolen drop safe and the store surveillance videotape, as well as other damaging evidence, was found in a search of Alverson's home. The baseball bat, the victim's bloody QuickTrip jacket, the other cuff from the set of broken handcuffs, and Wilson's Nike jacket which matched the one he wore on the surveillance tape were taken from Wilson's home. For a more detailed rendition of the facts, see *Wilson v. State*, 1998 OK CR 73, 983 P.2d 448 and *Brown v. State,* 1998 OK CR 77, 983 P.2d 474.

Alverson v. State, 983 P.2d 498, 506 (Okla. Crim. App. 1999).

## II.      Procedural History

Petitioner, Billy D. Alverson, was convicted following a jury trial in the District Court of

Tulsa County, Oklahoma, Case No. CF-95-1024, of Count I, Murder in the First Degree (malice

aforethought and felony murder) and Count II, Robbery With a Dangerous Weapon. His trial was

held jointly with co-defendant Ricky Harjo's trial, in front of separate juries. Petitioner was

represented at trial by attorney Jim Fransein. At the conclusion of the sentencing stage, Petitioner's

jury found the existence of two aggravating circumstances: (1) the murder was especially heinous,

---

[3] Additional facts, apparent from the record, may be presented throughout this opinion as they become pertinent to this Court's analysis.

atrocious or cruel; and (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. In accordance with the jury's recommendations, Petitioner was, on July 11, 1997, sentenced to death on the murder conviction (Count I), and to life imprisonment on the robbery conviction (Count II). He was represented by attorney Stuart Southerland at the sentencing hearing.

Petitioner filed a direct appeal of his convictions and sentences to the Oklahoma Court of Criminal Appeals ("OCCA") in case No. F-97-1018. On appeal, he was represented by attorney Stuart Southerland. Petitioner identified seventeen (17) propositions of error as follows:

| Proposition I: | The Appellant's confession and any other evidence gained as a result of the Appellant's warrantless arrest should have been suppressed as the arrest was effected without probable cause and all evidence gained as a result of it constitutes fruit of the poisonous tree. |
|---|---|
| Proposition II: | The admission of especially gruesome photographs constituted reversible error. |
| Proposition III: | The trial court allowed improper testimony into evidence in support of the store videotape. |
| Proposition IV: | The prosecutor's closing argument served to undermine Appellant's right to a fair trial pursuant to relevant provisions of both the Oklahoma and Untied States Constitution. |
| Proposition V: | The Appellant received ineffective assistance of counsel in violation of Article II, §§ 7, 9, and 20 of the Oklahoma Constitution and the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. |
| Proposition VI: | The trial court committed reversible error by forcing the Appellant to be tried in a dual jury trial with the co-defendant Harjo, a procedure not authorized by Oklahoma law, which resulted in a violation of the Appellant's rights under the Sixth, Eighth and Fourteenth Amendments of the Untied States Constitution, and Article II, §§ 7, 9, 19 and 20 of the Oklahoma Constitution. |

4

Proposition VII:        The trial court erred by permitting the State to introduce the results of DNA testing without holding a *Daubert* hearing prior to its introduction as required by law.

Proposition VIII:       Certain State's exhibits and testimony concerning the results of DNA, blood and other tests should not have been admitted into evidence because the State failed to establish a chain of custody for each of the items tested.

Proposition IX:        The trial court committed reversible error in refusing the Appellant's request that the jury be instructed on the offense of second degree murder.

Proposition X:        The Appellant's death sentence must be vacated because there was insufficient evidence that the murder was especially heinous, atrocious or cruel, and it was imposed upon him in violation of his constitutional rights under the State and Federal Constitutions.

Proposition XI:        As applied by the Court of Criminal Appeals, the especially heinous, atrocious or cruel aggravating circumstance does not perform the narrowing process required by the State and Federal Constitutions. Additionally, as defined by the jury instructions in the Appellant's case, the aggravating circumstance also fails to perform the narrowing process in violation of the State and Federal Constitutions.

Proposition XII:       The death penalty scheme in Oklahoma is unconstitutional.

Proposition XIII:      An unconstitutional likelihood exists that the instructions precluded full consideration of mitigation by prohibiting jury consideration of sympathy or sentiment.

Proposition XIV:      The Appellant's death sentence must be vacated because the use of victim impact evidence violated his rights under the State and Federal Constitutions to a fair sentencing procedure.

Proposition XV:       The aggravator "murder to avoid prosecution" is unconstitutionally vague and overbroad.

Proposition XVI:      The mitigation instructions, which permitted the jurors to ignore the mitigating evidence altogether, violated the Appellant's rights under the State and Federal Constitutions to a fair, impartial sentencing proceeding.

Proposition XVII:    The accumulation of error in this case deprived the Appellant of due process of law and a reliable sentencing procedure, which necessitates reversal pursuant to the Eighth and Fourteenth Amendments of the United States Constitution and Article II, §§ 7 and 9 of the Oklahoma Constitution.

See Brief of Appellant in OCCA Case No. F-97-1018. On May 6, 1999, the OCCA rejected Petitioner's alleged errors by affirming the convictions and sentences. The OCCA denied a rehearing on June 8, 1999. Alverson, 983 P.2d at 498. Petitioner's subsequent petition for writ of certiorari before the United States Supreme Court was denied on January 10, 2000. See Alverson v. Oklahoma, 528 U.S. 1089 (2000).

Represented by attorneys Robert Wade Jackson and Steven M. Presson, Petitioner also sought post-conviction relief from the OCCA in Case No. PC-98-1182. All requested relief was denied by the OCCA on July 19, 1999, in an unpublished opinion. See Order Denying Application for Post-Conviction Relief and Application for Evidentiary Hearing. The following three grounds were raised and rejected in the post-conviction proceedings:

Ground 1:    By denying Mr. Alverson's requests for funding to employ a neuropsychologist, the trial court deprived Mr. Alverson of the tools necessary for an adequate defense in violation of Ake v. Oklahoma.

A.    Mr. Alverson met the requisite showing to trigger the trial court's duty to provide expert assistance.

B.    Mr. Alverson received incompetent mental health assistance in preparation of his defense.

C.    The trial court's failure to hold the Ake hearings *ex parte* violated Mr. Alverson's Fifth, Sixth, and Fourteenth Amendment rights.

D.    Mr. Alverson was prejudiced by the lack of qualified expert assistance.

Ground 2: Mr. Alverson's convictions for first degree felony murder and robbery with a dangerous weapon violate the double jeopardy provisions of the United States and Oklahoma Constitutions.

Ground 3: Mr. Alverson was deprived of the effective assistance of counsel at trial and on appeal.

<u>See</u> Application for Post-Conviction Relief in OCCA Case No. PC-98-1182.

Petitioner initiated the instant habeas corpus proceedings on June 27, 2000. <u>See</u> Dkt. # 1. He seeks relief on the following grounds:

Ground One: By denying Mr. Alverson's requests for funding to employ a neuropsychologist, the trial court deprived Mr. Alverson of the tools necessary for an adequate defense in violation of <u>Ake v. Oklahoma</u>.

Ground Two: The use of dual juries in Mr. Alverson's case was unauthorized under state law and Mr. Alverson's conviction and death sentence pursuant to such a process was a structural error in the trial process itself in violation of the Eighth and Fourteenth Amendments requiring automatic reversal.

Ground Three: The evidence presented at trial was insufficient to prove that the murder of Mr. Yost was heinous, atrocious or cruel.

Ground Four: Mr. Alverson's rights guaranteed by the Eighth and Fourteenth Amendments were violated by the introduction of victim impact evidence during the penalty phase of the trial.

Ground Five: Mr. Alverson was deprived of the effective assistance of counsel at trial and on direct appeal.

Ground Six: The introduction of evidence obtained as the result of Mr. Alverson's warrantless arrest made without probable cause violated the Fourth, Eighth and Fourteenth Amendments of the United States Constitution.

Ground Seven: Cumulative error entitles Mr. Alverson to habeas corpus relief.

Ground Eight: Mr. Alverson is entitled to an evidentiary hearing.

<u>See</u> Dkt. # 12.

7

## GENERAL CONSIDERATIONS

I.    **Exhaustion**

Federal habeas corpus relief is generally not available to a state prisoner unless all state court

remedies have been exhausted prior to the filing of the petition. 28 U.S.C. § 2254(b). Harris v.

Champion, 15 F.3d 1538, 1554 (10th Cir. 1994); see also Wainwright v. Sykes, 433 U.S. 72, 80-81

(1977) (reviewing history of exhaustion requirement). In every habeas case, the court must first

consider exhaustion. Harris, 15 F.3d at 1554. "States should have the first opportunity to address and

correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722,

731 (1991). Respondent concedes, and the Court agrees, that the exhaustion requirement of 28

U.S.C. § 2254(b) is satisfied in this case.

II.   **Procedural Bar**

The Supreme Court has also considered the effect of state procedural default on federal

habeas review, giving strong deference to the important interests served by state procedural rules.

See, e.g., Francis v. Henderson, 425 U.S. 536 (1976). Habeas relief may be denied if a state disposed

of an issue on an adequate and independent state procedural ground.  Coleman, 501 U.S. at 750; see

also Romero v. Tansy, 46 F.3d 1024, 1028 (10th Cir. 1995); Brecheen v. Reynolds, 41 F.3d 1343,

1353 (10th Cir. 1994).

A state court's finding of procedural default is deemed "independent" if it is separate and

distinct from federal law. Ake v. Oklahoma, 470 U.S. 68, 75 (1985); Duvall v. Reynolds, 139 F.3d

768 (10th Cir. 1998).  If the state court finding is applied "evenhandedly to all similar claims," it

will

8

be considered "adequate." Maes v. Thomas, 46 F.3d 979, 986 (10th Cir. 1995) (citing Hathorn v. Lovorn, 457 U.S. 255, 263 (1982)). A state court's application of a procedural bar will be excused where a petitioner can demonstrate either: (1) good cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice would occur if the merits of the claims were not addressed in the federal habeas proceeding. Coleman, 501 U.S. at 749-50.

### III.    Standard of Review - AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "the Act") establishes the guidelines under which a federal court may grant habeas relief. Under AEDPA, a writ of habeas corpus will not be granted unless the state court's adjudication of the merits of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)(2). This Court must presume the state court's factual findings are correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The first step in applying § 2254(d)(1) AEDPA standards is to assess whether there was clearly established federal law at the time the conviction became final, as set forth in the holdings of the Supreme Court. House v. Hatch, 527 F.3d 1010, 1016-17 (10th Cir. 2008). If clearly established federal law exists, the Court must then consider whether the state court decision was contrary to or involved an unreasonable application of the Supreme Court law. Id. at 1018. A state court decision is "contrary" to clearly established law "if the state court applies a rule different from

the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002). A state court decision is an "unreasonable application" of clearly established law when the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of petitioner's case." <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000)). Further, an unreasonable application "may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply." <u>House</u>, 527 F.3d at 1018.

Petitioner's habeas proceedings in the instant case commenced well after the effective date of the AEDPA. Although the crime for which Petitioner was convicted predates the law's enactment, the provisions of the Act govern pursuant to <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997). Accordingly, this Court finds that the AEDPA is applicable and will apply it herein to all claims adjudicated on the merits in state court proceedings.

## <u>PETITIONER'S GROUNDS FOR RELIEF</u>

### I.      Denial of funding for neuropsychologist (ground one)

Petitioner's first ground concerns the trial court's refusal to approve funding for a neurological examination designed to assist in the presentation of mitigating evidence in the sentencing phase of his trial. Acknowledging that the key issue at trial was punishment, Petitioner argues that it was crucial for Petitioner to "have access to a competent mental health expert capable of marshaling evidence weighing in favor of a sentence less than death." Dkt. # 12 at 6.  Relying on <u>Ake v. Oklahoma</u>, 470 U.S. 68 (1985), Petitioner contends that the trial court's multiple denials of

10

Petitioner's requests for funding to employ a neuropsychologist deprived him of his due process rights. Respondent asserts that the OCCA determined that this claim was waived because it could have been, but was not, raised on direct appeal. He urges the Court to uphold the procedural bar imposed by the OCCA. Dkt. # 14 at 6. Alternatively, Respondent argues that any error by the trial court in denying funding for a neuropsychologist constituted harmless error.  Id. at 10.

As an initial matter, the Court finds that Petitioner's ground one claim is not procedurally barred because the OCCA reached the merits of this claim on direct appeal. In proposition five of his brief on direct appeal, Petitioner claimed that his trial counsel was ineffective for failing to provide social worker Beverly Jean Carlton with adequate information and prepare for her testimony. See Brief of Appellant in OCCA Case No. F-97-1018 at 30. He also claimed his trial counsel failed to investigate a head injury suffered by Petitioner in his youth. Id. at 31. The OCCA rejected the ineffective assistance of counsel claim, finding as follows:

> Finally, Alverson takes issue with counsel's failure to investigate alleged head injuries Alverson had received as a child. Counsel did request funds to hire an expert to look into this issue, which was properly denied by the trial court. Because Alverson has presented no evidence to support his contention that ordinary injuries he received as a child resulted in inorganic brain damage, we dispose of this claim on a lack of prejudice as well.

Alverson, 983 P.2d at 511 (emphasis added). The OCCA further explained its ruling in a footnote to the sentence emphasized above:

> The defense relied on the results of the MMPI-2 which the previously appointed expert, Jean Carlton, had administered. Carlton admitted during her testimony that she was not even qualified to administer the MMPI. Even if she had been qualified, the trial court correctly ruled that the MMPI does not indicate whether a person has neurological problems, and additionally, none of the doctors who examined Alverson following his run-of-the-mill childhood accidents indicated the possibility that they had created neurological damage or that an evaluation for neurological damage was necessary. Accordingly, the trial court did not abuse its discretion in denying Alverson's motion for expert assistance at State expense. Rogers v. State, 1995 OK

11

> CR 8, ¶ 4, 890 P.2d 959, 967 (before a defendant may qualify for court-appointed
> expert assistance, he must make a showing of need and show that he will be
> prejudiced by the lack of expert assistance), *citing Ake v. Oklahoma*, 470 U.S. 68,
> 105 S. Ct. 1087, 84 L.Ed.2d 53 (1985).

Id. at n.34 (internal citations to the record omitted) (emphasis added). Although Petitioner had not

specifically challenged the denial of funding by the trial judge, the OCCA clearly addressed the

issue in its rejection of the ineffective assistance of trial counsel claim.

In his Application for Post-Conviction Relief, filed in OCCA Case No. PC-98-1182,

Petitioner cited Ake, raising the same issue as ground one in the instant habeas proceedings. The

OCCA rejected the issue, finding:

> In Proposition I Alverson claims the trial court's denial of his requests for funds to
> hire a neuropsychologist deprived him of the tools necessary for his defense in
> violation of *Ake v. Oklahoma*. . . . Alverson presents two affidavits in support of this
> proposition. One is from Jean Carlton, the licensed clinical social worker who
> testified on Alverson's behalf at trial, reiterating her suspicions of possible organic
> brain damage. The second is from Dr. Phillip J. Murphy finding that Alverson suffers
> from an organic brain disorder of obscure etiology which was not known at the time
> of his trial.

See Order Denying Application for Post-Conviction Relief in OCCA Case No. PC-98-1182. Citing

Okla. Stat. tit. 22, § 1089(C)(1), the OCCA determined that Alverson's proposition could have been

raised on direct appeal but was not. Accordingly, the OCCA found the claim waived. Id. Again,

however, the OCCA addressed the merits in a footnote to this section, noting:

> In any event, we have already determined that the trial court's denial of a
> neurological *Ake* expert was proper, albeit in the context of Alverson's ineffective
> assistance of trial counsel claim on direct appeal. *See Alverson v. State*, 1999 OK CR
> 21, ¶ 31 at n.4, __ P.2d at __ n.34.

See id. at 3, n.7. Contrary to Respondent's position that Petitioner's ground one claim is

procedurally barred, the Court finds that the OCCA addressed the merits of Petitioner's claim in the

order on direct appeal, and restated its position in the order denying post-conviction relief. See

12

Hawkins v. Mullin, 291 F.3d 658, 663 (10th Cir. 2002) (stating that where a state court actually decides an issue on the merits, state procedural bar will not preclude federal habeas corpus review) (quotation omitted).  Further, it is apparent that the OCCA examined and considered non-record evidence proffered by Alverson in the form of two affidavits before concluding that the trial court did not err in denying funding for a neurological examination of Alverson. The Court is aware of the recent Tenth Circuit decision, entered in co-defendant Wilson's habeas appeal, in which a panel of the Circuit Court concluded that the District Court for the Northern District of Oklahoma in Case No. 00-CV-147-CVE-FHM,  abused its discretion in denying Wilson an evidentiary hearing by giving deference to the OCCA's decision when the OCCA made no reference to proffered non-record evidence. See Wilson v. Sirmons, 536 F.3d 1064, 1083 (10th Cir. 2008).[4] However, in Alverson's case, the OCCA summarized the contents of each non-record affidavit before rendering its decision in the post-conviction proceeding. Thus, under AEDPA's standard of deference, this Court will review the OCCA's rejection of Petitioner's ground one claim pursuant to 28 U.S.C. § 2254(d). Cf. Welch v. Sirmons, 451 F.3d 675, 704, 708-09 (10th Cir. 2006) (applying AEDPA deference when the OCCA referred to the proffered affidavits in the course of denying an ineffective assistance claim).

In Ake v. Oklahoma, 470 U.S. 68, 83 (1985), the Supreme Court held that when a defendant demonstrates to the trial judge that his mental capacity "is to be a significant factor at trial, the State

---

[4] As of the entry of this Order, a mandate has not been issued in the Wilson habeas appeal. A petition for rehearing *en banc* was granted on December 3, 2008. See docket sheet for Tenth Circuit Court of Appeals Case No. 06-5179. This Court is also aware that the Supreme Court has recently granted *certiorari* to resolve a circuit split regarding the deference to be accorded state court decisions which do not reference proffered non-record evidence. Bell v. Kelley, --U.S.--, 128 S.Ct. 2108, 171 L.Ed.2d 228 (2008).

must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Nonetheless, a criminal defendant must offer "more than undeveloped assertions that the requested assistance would be beneficial." Caldwell v. Mississippi, 472 U.S. 320, 323 n.1 (1985). "General allegations supporting a request for court appointment of a psychiatric expert, without substantive supporting facts, and undeveloped assertions that psychiatric assistance would be beneficial to the defendant will not suffice to require the appointment of a psychiatrist to aid in the preparation of a criminal defense." Liles v. Saffle, 945 F.2d 333, 336 (10th Cir. 1991).

In Ake, the Supreme Court concluded that due process entitled Ake to the assistance of a psychiatrist because Ake's insanity defense was based upon fact rather than unsupported allegations, and the State's case relied heavily upon expert testimony concerning Ake's continuing criminal threat to society. Ake, 470 U.S. at 83. The Court noted that, "[W]hen a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense." Id. at 76. The Court further explained that indigent defendants must have "access to the raw materials integral to the building of an effective defense." Id. at 77. The question becomes whether, under the particular circumstances of the case, the expert's testimony "could legitimately be characterized as 'integral to the building of an effective defense,' i.e., one of the 'basic tools of an adequate defense.'" Toles v. Gibson, 269 F.3d 1167, 1176 (10th Cir. 2001) (quoting Ake, 470 U.S. at 77).

If this Court determines that the missing expert's testimony was one of the "basic tools of an adequate defense," then Petitioner's due process rights were violated. The analysis does not end there, however. In Toles, the Tenth Circuit held that:

14

> The denial of expert assistance in violation of <u>Ake</u> is trial error subject to harmless error analysis under the standard set forth in <u>Kotteakos v. United States</u>, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (asking whether the error "had substantial and injurious effect or influence in determining the jury's verdict"). <u>See</u> <u>Brewer v. Reynolds</u>, 51 F.3d 1519, 1529 (10th Cir.1995). Under this standard, we can grant relief only if we believe the error substantially influenced the jury's decision, or if we are in grave doubt as to the harmlessness of the error. <u>See</u> <u>O'Neal v. McAninch</u>, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

<u>Toles</u>, 269 F.3d at 1176-77 (footnote omitted). Accordingly, this Court will first determine whether Petitioner's due process rights were violated by the trial court's denial of funding for a neuropsychologist. If so, the harmless error question must then be decided.

In this case, Petitioner requested funds to employ a mental health expert on four separate occasions:

(1)     On October 29, 1996, approximately six months before the scheduled trial date, Alverson filed an application for funds for social study and psychological evaluation at State expense. <u>See</u> O.R. Vol. I at 188. In the application, Petitioner stated the information provided by such experts would be "essential to refute the aggravating allegations in the punishment stage of the trial." <u>Id.</u>  According to Petitioner and to a notation at the top of the application (see <u>id.</u>), the Court denied the motion on the ground that Petitioner was not indigent.

(2)     On March 20, 1997, Alverson reurged his motion, seeking $750 to employ Jean Carlton, a licensed social worker. As grounds, Petitioner argued that he was in need of expert assistance to prepare and present evidence against the death penalty in the second stage. <u>See</u> O.R. Vol. II at 278. The trial court found Alverson indigent, and granted the motion. <u>Id.</u> at 287.

(3)     On May 1, 1997, Petitioner sought approval for additional funding from the court in order to engage the services of Lanz Karfgin, Ph.D., to conduct neuropsychological testing on Alverson. <u>Id.</u> at 327-29. Petitioner argued that, as a result of testing conducted by Jean Carlton,

further expert testing was necessary to confirm the possibility that Alverson suffered from an organic brain impairment. Id. at 328. The State of Oklahoma filed an objection to Petitioner's request. Id. at 343. After hearing arguments from both sides, the Court denied Petitioner's request at a hearing held on May 5, 1997. See Trans. of Hr'g held May 5, 1997, at 24-29. The trial judge noted, "I did not find in any of the results from the MMPI of the work that Ms. Carlton did, that Mr. Alverson has sustained any neurological impairment that warrants evaluation." Id. at 28.

(4)     Petitioner renewed his request for funds to engage the services of neuropsychologist Lanz Karfgin by amended motion filed on May 9, 1997 (O.R. Vol. II at 358). Attached to the amended request was a letter from Lanz Karfgin in which he detailed potential mitigating issues concerning Petitioner's mental health.  After holding a hearing and considering the parties' arguments, the trial court again denied the request. The trial judge further indicated that he based his denial on the documents provided and his own observations of Alverson in the courtroom. See Trans. of Hr'g held May 13, 1997 at 3-5.

Based upon the evidence submitted by Alverson in support of his May 9, 1997 amended request for funds for an expert, the Court finds that the evidence was sufficient to trigger the application of Ake. Petitioner provided substantive supportive facts, in the form of a report from Jean Carlton and a letter from Lanz Karfgin, to make his threshold showing of need. See Liles, 945 F.2d at 336. The State of Oklahoma put Alverson's future dangerousness at issue, and Petitioner presented sufficient evidence to suggest that his mental condition was likely to be a significant factor during the sentencing stage. See Castro v. Oklahoma, 71 F.3d 1502, 1513-14 (10th Cir. 1995). The Court concludes that the State should have provided Alverson with the opportunity for neurological

16

testing, and the trial court's denial of funds for such testing constituted a violation of his due process rights. Ake, 470 U.S. at 87.

Having found constitutional error, the Court must now determine whether the error was harmless; i.e., whether the error had a substantial and injurious effect or influence in determining the jury's verdict. Walker v. Attorney General, 167 F.3d 1339, 1348 (10th Cir. 1999) (citing Kotteakos v. United States, 328 U.S. 750 (1946)); Brewer v. Reynolds, 51 F.3d 1519, 1529 (10th Cir. 1995). Under this standard, the Court will grant relief if it finds the error substantially influenced the jury's decision, or if the Court is in grave doubt as to the harmlessness of the error. See O'Neal v. McAninch, 513 U.S. 432, 436 (1995).

As noted above, Petitioner engaged the services of licensed clinical social worker, Jean Carlton. Ms. Carlton conducted several tests on Alverson (Tr. Trans. Vol. IX at 173), reported her findings to defense counsel (Application for Post-Conviction Relief, Ex. 4), and testified during second stage trial proceedings regarding her conclusions (Tr. Trans. Vol. IX at 149-235). She testified that Alverson suffered from dissociative spells, which began at age three when he was traumatized by his uncle's death. Id. at 156, 171-72. Based upon interviews with family members, Ms. Carlton testified that Petitioner was "extremely clumsy" as a child, falling down stairs and bumping into furniture, but at least one visit to a doctor resulted in the doctor saying he appeared to be okay. Id. at 158-59. She also testified that, while growing up, Petitioner suffered emotional and physical abuse from his alcoholic father. Id. at 163-67. She provided background about Petitioner's social, school and work history. Id. at 167-69. She concluded that Alverson was a "follower" who might not have the personal strength to "extricate himself out of a situation." Id. at 174. The prosecutor conducted a rigorous cross-examination of Ms. Carlton. Id. at 176-219. Despite the

17

prosecutor's cross-examination, together with other evidence put on regarding the prosecution's position that Alverson was a continuing threat to society, the jury did not find the existence of that aggravating circumstance. Tr. Trans. Vol. X at 76-77.

Upon review of the record, the Court is convinced that the lack of the additional mental health testing did not have a substantial injurious impact on the jury's decision to recommend the death penalty. In contrast to <u>Ake</u>, the issue of Alverson's "future dangerousness" did not affect the sentence imposed. The jury failed to find as an aggravating circumstance that Alverson was a continuing threat to society. However, the jury did find the existence of two other aggravating circumstances: (1) the murder was especially heinous, atrocious or cruel;[5] and (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. These aggravators were amply supported by the evidence.  The additional mitigating evidence that could have resulted from a neurological examination would not have affected the jury's findings on these two aggravators. In a similar case, the Tenth Circuit held that a state court's error under <u>Ake</u> was harmless, as follows:

> With regard to the sentencing phase of his trial, Mr. Ross contends that because the state introduced evidence of his "continuing threat to society," the evidence of his mental condition constitutes a threshold showing of prejudice. Mr. Ross contends that, with a competent expert, he could have presented powerful evidence of his low intelligence and other organic brain damage, as well as other evidence that would have been significant in mitigation. Although *Ake* applies when the state introduces evidence of a defendant's continuing threat to society, *see* <u>Castro</u>, 71 F.3d at 1514-15, even if we were to conclude that Mr. Ross could have made a threshold showing that his mental condition would have been a significant mitigating factor,

---

[5] Petitioner's argument that the heinous, atrocious or cruel aggravator also places his mental condition at issue in sentencing has been rejected previously by the Tenth Circuit. <u>Castro</u>, 71 F.3d at 1515; <u>Brewer</u>, 51 F.3d at 1531 ("The Oklahoma Court of Criminal Appeals has construed the heinous, atrocious, and cruel aggravator in such a manner such that it does not implicate a defendant's mental condition.").

we find that the state court's denial of expert funds to employ an expert was harmless error. *See* Brewer, 51 F.3d at 1529 (finding that the denial of an expert in violation of *Ake* is subject to harmless error analysis). We find that the mitigating evidence that could have resulted from any psychiatric evaluation would not have been sufficient to have influenced the jury's recommendation of the death penalty, in light of the jury's findings with regard to the other three aggravating circumstances.

Ross v. Ward, 165 F.3d 793, 799 (10th Cir. 1999); see also Rogers v. Gibson, 173 F.3d 1278, 1286 (10th Cir. 1999); Moore v. Reynolds, 153 F.3d 1086, 1111 (10th Cir. 1998). This Court is confident that the omission of the additional mitigating evidence Petitioner argues should have been presented to the jury did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brewer, 51 F.3d at 1529 (quoting Kotteakos, 328 U.S. at 776). The mitigating evidence that may have resulted from a state funded neurological examination would not have influenced the jury's decision regarding the heinous, atrocious or cruel and avoid arrest aggravating circumstances. Thus, the trial court's error was harmless. This Court finds no prejudice resulting from the State's refusal to assist Alverson in obtaining a neurological evaluation, and the OCCA's decision was not contrary to, or an unreasonable application of, Supreme Court law. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on this claim.

## II.    Dual juries (ground two)

During Petitioner's trial, "dual" juries were empaneled to try Petitioner and his co-defendant, Ricky Harjo, simultaneously. Petitioner alleges in his second ground for relief that the use of such dual juries violated his Eighth and Fourteenth Amendment rights because the procedure was unauthorized under state law and constituted structural error in the trial process itself.

19

Relying heavily on language from a Ninth Circuit panel decision[6] which was subsequently reversed, Petitioner asserts that because the use of dual juries is not specifically authorized under Oklahoma law it was a violation of his due process rights and constituted a structural error in his trial proceedings. Dkt. # 12 at 26-36. Additionally, Petitioner claims that the use of a dual jury system prejudiced his defense because it stifled cross-examination and created a conflict of interest for his attorney. Id. at 36. Respondent asserts that the use of dual juries is not structural error, and Petitioner has failed to demonstrate any prejudice from use of the dual juries at his trial. Dkt. #14 at 19.

*Use of Dual Jury is not structural error*

In rejecting this claim on direct appeal, the OCCA found the dual jury process used in Petitioner's trial was constitutional.[7]

> Alverson and co-defendant Harjo were tried conjointly, but with separate juries deciding their fate. Alverson complains in his sixth proposition of error that this dual jury procedure is not authorized by law, and that it deprives him of a fair trial. We disagree.
>
> This Court has approved the use of dual juries in codefendant cases. Additionally, we previously ruled in an "Extraordinary Writ" action initiated by Alverson and his codefendants that the use of dual juries in this case was discretionary with the trial judge since the procedure is not prohibited by Oklahoma law. Accordingly, collateral

---

[6] Lambright v. Stewart, 167 F.3d 477 (9th Cir. 1999), *reversed*, 191 F.3d 1181 (9th Cir. 1999) (*en banc*). Petitioner recognizes that the Lambright panel decision was reversed, but urges this Court to adopt the analysis of the panel and of the dissent in the *en banc* Lambright opinion. See Dkt. #12 at 34.

[7] The OCCA also ruled in an "Extraordinary Writ" action initiated by Petitioner and two of his co-defendants prior to the commencement of his trial that Oklahoma law did not preclude the trial court from exercising discretion to impanel dual juries. Harjo, et al. v. Turnbull, Order Denying Petitions for Extraordinary Relief, Nos. P-96-1258, P-96-1266, P-96-1278 (Okla. Crim. App. January 14, 1997) (not for publication). See O.R. Vol. II at 219-26.

> estoppel prevents Alverson from arguing the dual jury procedure in this case was
> contrary to Oklahoma law.

Alverson, 983 P.2d at 506 (footnotes omitted). Petitioner argues that the OCCA erred because the

unauthorized use of a dual jury procedure violates constitutional due process, constitutes structural

error, and requires reversal without a showing of specific prejudice. Dkt. # 12 at 27.

A constitutional error is either structural or it is not. Never v. United States, 527 U.S. 1, 14

(1999). However, it is necessary to find constitutional error before categorizing it as structural or

not. Federal courts that have considered challenges to the use of dual juries have, without exception,

concluded that the procedure is not *per se* violative of constitutional protections. See, e.g.,

Lambright v. Stewart, 191 F.3d 1181, 1186 (9th Cir. 1999) (finding no violation of due process or

any other trial right in the use of dual juries in a capital case); Smith v. DeRobertis, 758 F.2d 1151

(7th Cir. 1985), *cert. denied*, 474 U.S. 838 (1985) (holding that the use of dual juries is not a *per se*

violation of due process and that a criminal defendant must show some specific, undue prejudice to

be entitled to relief); Padilla v. Dorsey, 221 F.3d 1352, 2000 WL 1089502 (10th Cir. 2000)

(unpublished table decision), *cert. denied*, 531 U.S. 1116 (2001) (denying a certificate of

appealability and finding that the habeas petitioner had failed to make a substantial showing of the

denial of a constitutional right on his claims, including his claim that he was prejudiced as a result

of dual juries in a single trial); United States v. Lewis, 716 F.2d 16, 19 (D.C. Cir. 1983); United

States v. Hayes, 676 F.2d 1359, 1366 (11th Cir. 1982).  Significantly, the Tenth Circuit has also

concluded that use of a dual jury system is not structural error. Brown v. Sirmons, 515 F.3d 1072,

1078 (10th Cir. 2008). The Tenth Circuit noted in co-defendant Brown's habeas appeal that the trial

court did not abuse its discretion by empaneling dual juries. As in Brown, by arguing that the dual

jury procedure is a structural error rather than a harmless error, Petitioner presumes that the

21

procedure is a constitutional error and seeks to categorize it as structural.  This Court finds that, although use of the dual jury procedure may be innovative and novel, utilization of the procedure is not constitutional error, structural or otherwise. The OCCA' s decision was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). Petitioner has failed to demonstrate that the use of dual juries is constitutionally impermissible and he shall not be entitled to habeas relief on this issue.

*Prejudice*

Having found that the procedure to seat two juries and simultaneously try both Petitioner and one of his co-defendants is not a *per se* violation of Petitioner's constitutional rights, the Court now turns to Petitioner's claims that the dual jury process prejudiced the presentation of his case. Petitioner asserts that the implementation of the dual jury mechanism prejudiced his defense by "stifling cross examination and creating a conflict of interest in [his] counsel's representation" at trial (Dkt. #12 at 36).

The record reflects that the trial court judge entered a Final Amended Trial Schedule establishing the dual jury procedure to be used in Petitioner's conjoint trial with his co-defendant. See O.R. Vol. II at 273-77.  The record also demonstrates that the trial judge was aware of the potential for error inherent in the procedure and meticulously explained the process to Petitioner's jury, instructing them that:

> I need to give you all some specific legal instructions that deal with the type of trial that we are doing here, the multiple jury device. As I explained to all of you when you came in the courtroom on Monday, we have decided to use the multiple jury device to provide a fair and speedy trial. We hope that it will be logistically more efficient and that we will conserve judicial resources by doing so. And that the adverse impact on the families of the victims and the defendants will be avoided by having only two different settings instead of four.
> . . .

22

But it's important to me to make sure that none of you will have a problem in concentrating and listening to the evidence and in your deliberation process with that procedure in mind. Would anyone have any difficulty, knowing that that's going to be the situation that we're going to be in? All right. Very good.

Next, you understand that both defendants will be present in the courtroom throughout the trial. And you, as jurors, are not to draw any inferences from the fact that both defendants are present and seated at the same counsel table. Up in Judge Shallcross's courtroom, there's a little bit larger, as far as the size of the tables that we will use, and you must understand that Mr. Fransein and Mr. Alverson will be seated at a table along with Mr. Harjo and Mr. Harjo's attorneys. Would anyone be in a bad spot knowing that both the defendants were present in the courtroom at the same time?

All of you understand that you will be -- it will be your job to decide the guilt or innocence of Mr. Alverson, and that will be the only job that you will have. Everyone clear on that? Would anyone have any difficulty in keeping that in mind? Very good.

You will, as the case goes along, you will hear evidence as to both defendants. Evidence that is common to both of these defendants when evidence is being presented. And you will hear statements that are common to both defendants, both from the State and the attorneys that are involved in this case. Is there anyone that would not be able to look at the evidence independently and make their decisions about Mr. Alverson, the Defendant in your case?

You need to keep in mind that there will be evidence that will be presented to only one jury and possibly some evidence that will be presented to only the other jury. And that you, as jurors, must not speculate on the nature of the evidence being offered in the courtroom while you are outside, nor should you derive that the number of times one jury is in or out of the courtroom is a sign that one defendant is more responsible than the other.

And what I mean by that is, there are going to be times, once we get upstairs, you will notice the court will be in session upstairs only with the jurors that are here for Mr. Harjo. Then there will be other times when those jurors are out of the courtroom, and only the 14 jurors in this case will be present in the courtroom. Everyone understand that it doesn't matter how many tines you are in or out of the courtroom, Defendant Harjo's jury is in or out of the courtroom, that has no bearing on who is more responsible in this case, if either one of the defendants are responsible whatsoever. It doesn't deal with any culpability, or if you find any culpability at all. Would everyone remember that?

. . .

23

> You need to keep in mind that you must consider only the evidence that you hear
> while court is in session and you must consider only the evidence that is relevant to
> the Defendant Alverson who is in the courtroom with us today. You need to listen
> to all the testimony, view all the exhibits that are presented regardless of which
> attorney elicits, but you must consider only the evidence that is relevant to the
> Defendant Alverson.

(Tr. Trans. Vol. III at 487-90).  The OCCA concluded that the trial judge "painstakingly instructed

Alverson's jury." Alverson, 983 P.2d at 507. Further, the instructions were "designed to alleviate

any possible confusion or speculation on the part of the two juries." Id.

1.      *Cross-examination*

        Petitioner argues that the dual jury procedure unconstitutionally chilled his right to cross-

examine the prosecution's witnesses because the procedure required counsel to refrain from causing

prejudice to co-defendant Harjo. Respondent observes that Petitioner points to no specific instances

during trial when Petitioner's attorney's cross examination techniques were stifled. The OCCA

found that Petitioner's claims of prejudice concerning the issue of cross-examination did not warrant

relief, holding:

> Alverson first claims the procedure had a chilling effect on cross-examination
> because the attorneys for the respective defendants had to be careful not to ask
> questions that were prejudicial to one co-defendant without first having the other co-
> defendant's jury removed. He claims when this occurred, his jury was left to
> improperly speculate that evidence against was about to be presented. Alverson does
> not cite to any instances showing actual prejudice, but rather hypothesizes that his
> jury was prejudiced in this way. We are not persuaded.

See Alverson, 983 P.2d at 506-07. The Tenth Circuit rejected a similar claim raised by co-defendant

Brown, finding that "[T]he OCCA's rejection of Mr. Brown's challenge to the use of dual juries was

not an unreasonable application of federal law." Brown, 515 F.3d at 1078. As in Brown, this Court

has found no instance where Alverson was prejudiced by a perceived "chilling effect" on cross-

examination by his counsel. Petitioner provides no authority to convince this Court that the OCCA's

24

ruling was an unreasonable application of clearly established Supreme Court law, or was based on an unreasonable determination of facts.  28 U.S.C. § 2254(d).

2.      *Attorney conflict of interest*

Petitioner next claims that the implementation of the dual jury procedure created a "built-in" conflict of interest for his trial attorney, requiring reversal as in Holloway v. Arkansas, 435 U.S. 475 (1978). He asserts that his counsel was required to protect co-defendant Harjo during questioning and cross-examination of witnesses. Addressing Petitioner's general conflict of interest concerns, the OCCA stated:

> Alverson also claims that the dual jury procedure created a conflict of interest situation because his attorney was ordered not to do anything to prejudice co-defendant Harjo. He asserts this placed his attorney in a position where he had to simultaneously protect the interest of two parties. However, this is not the case. Alverson's attorney was merely instructed not to do anything to prejudice co-defendant Harjo *in the presence of Harjo's jury*. All Alverson's lawyer had to do was to ask the court to remove Harjo's jury if he wanted to proceed along lines which were damaging to Harjo. This in no way made him an advocate or a co-counsel for Harjo, and Alverson's reliance on *Holloway v. Arkansas*, is entirely misplaced.

Alverson, 983 P.2d at 507. This Court agrees. Further, Petitioner's counsel was not faced with conflict issues such as those detailed in Holloway because co-defendant Harjo had separate counsel.

Petitioner next points to a specific instance during trial which he claims resulted in prejudice. State's witness Mandy Rumsey was a customer at the QuikTrip store in the early morning hours of February 26, 1995.  Tr. Trans. May 13, 1997, at 83-85. She testified about her contacts with both co-defendant Harjo and Alverson while at the store. On cross-examination, Harjo's attorney elicited an admission from Ms. Rumsey that she did not see any dark stains or anything associated with blood on Harjo's hands, face, shirt or trousers. Id. at 98. When Alverson's attorney began his cross-examination he asked Ms. Rumsy if she was able to see any dark stains on Petitioner. Id. at 101. She

25

responded, "No." Id. At issue is the following exchange between the witness and Harjo's attorney

on re-cross examination:

> Q:    Do you recall how that person that you now know the name of Alverson to go with,
>        how that person was dressed?
>
> A:    All I remember is he was wearing a dark blue coat, a jacket.
>
> Q:    Okay. Is that one of the reasons why you couldn't tell us one way or the other about
>        any stains that might be on the coat because of the color?
>
> A:    Yes.

Id. at 106. Alverson's attorney then conducted his own re-cross examination. After the witness was

dismissed, Petitioner's trial counsel moved for a mistrial, arguing that he did not "need three

prosecutors" in the case. Id. at 109-11. The motion was denied. Id. at 111. Petitioner now asserts that

this was an example of the prejudice he suffered due to the conflict of interest the attorneys had in

the dual jury procedure.

Petitioner raised this claim on direct appeal. Relief was denied by the OCCA, which found

as follows:

> Rumsey had testified that she did not see blood on Harjo, whom she knew, the night
> of the murder. She also testified that she had not paid much attention to Alverson
> because she did not know him. Harjo's counsel asked Rumsey what color clothing
> Alverson was wearing that night, and she answered that he was wearing a dark blue
> jacket. Harjo's counsel then asked her if that was one reason she couldn't tell if he
> did or didn't have blood on his clothing - because of the dark color.
>
> Alverson's attorney did not object to this question in a timely manner, waiving all
> but plain error. We disagree that the question put Alverson in a position of having
> to defend against two prosecutors. It was a question asked solely for clarification and
> did not elicit any information that Alverson's jury did not already have before it.
> Accordingly, it did not rise to the level of plain error.

Alverson, 983 P.2d at 507. After reviewing the entire trial transcript, the Court finds that the

testimony elicited from witness Rumsey did not prejudice Alverson. The OCCA did not

26

unreasonably apply Supreme Court law, nor did it base its decision on an unreasonable application of facts to the law.

Accordingly, the Court finds Petitioner's prejudice challenge based on the dual jury procedure utilized at his trial is without merit. The Court has found no evidence of confusion or impropriety in the dual jury proceedings.  Petitioner has failed to demonstrate a specific and undue prejudice to his defense from the procedure. See Smith v. DeRobertis, 758 F.2d 1151, 1152 (7th Cir. 1985).  In light of the evidence of guilt presented by the prosecution, the Court also finds Petitioner was not prejudiced by any perceived "chilling effect" on cross-examination of the State's witnesses. Additionally, the implementation of the dual jury procedure did not create a conflict of interest for his attorney such as the one described in Holloway v. Arkansas, 435 U.S. 475 (1978).  In summary, after reviewing the record from Petitioner's trial, the Court concludes that Petitioner was not prejudiced by the dual jury procedure utilized at his trial. He is not entitled to habeas relief on this issue.

## III.    Heinous, atrocious, or cruel ("HAC") aggravator (ground three)

In his third claim for habeas corpus relief, Petitioner presents a three-part argument challenging the heinous, atrocious or cruel aggravator.  First, he contends that the State introduced insufficient evidence to support the finding that the murder of Mr. Yost was especially heinous, atrocious, or cruel in violation of Petitioner's rights under the Eighth and Fourteenth Amendments. Next, he asserts that the evidence was insufficient to support the finding that Petitioner substantially participated in the murder under the requirements of Lockett v. Ohio, 438 U.S. 586 (1978), Enmund v. Florida, 548 U.S. 782 (1982), and Tison v. Arizona, 481 U.S. 137 (1987). Finally, he maintains

27

that the HAC aggravator, as applied in the State of Oklahoma, is unconstitutional because it does not adequately narrow the class of murderers eligible for the death penalty.

*Sufficiency of Evidence for HAC Aggravator*

Petitioner's first challenge to the HAC aggravator is an evidentiary one. Specifically, Petitioner asserts that the prosecution failed to present evidence of conscious physical suffering by the victim or extreme mental cruelty as required by Oklahoma law for application of the HAC aggravator. Respondent contends that the evidence supported a finding that Mr. Yost suffered mental torture and endured conscious physical suffering sufficient to satisfy the HAC requirements. The Tenth Circuit has instructed that issues regarding sufficiency of the evidence raised in a habeas petition involve mixed questions of law and fact. Brown v. Sirmon, 515 F.3d 1072, 1089 (10th Cir. 2008); Maynard v. Boone, 468 F.3d 665, 673 (10th Cir. 2006). The Court must apply both 28 U.S.C. § 2254(d)(1) and (d)(2) to determine whether the facts are correct and whether the law was properly applied to the facts. Brown, 515 F.3d at 1089.

At trial, the jury found the HAC aggravator for the murder of Mr. Yost. See O.R. Vol. III at 474. The OCCA reviewed the evidence on direct appeal and found that the HAC aggravator was supported by the evidence. Denying relief on this issue, the OCCA found ample evidence of both conscious physical suffering and extreme mental torture suffered by Yost:

> In this case, the State's evidence was that Alverson and his three co-defendants jumped Yost and dragged him into the back cooler. Alverson and Harjo then left the cooler to go outside and retrieve handcuffs and a baseball bat. It is safe to infer that restraints were necessary because the victim was struggling. One can hear the victim screaming for help on the surveillance tape as Alverson and Harjo exit the store. We find that even before the baseball bat was brought into the cooler, the victim had already "suffered the extreme mental anguish of being held captive, knowing that his ultimate fate rested in the hands of his attackers whom he could identify if left to live."

28

> Once Alverson and Harjo returned to the cooler with the baseball bat, over forty "pings" could be heard as the brutal beating took place. Although the medical examiner testified that many of the blows could have caused instantaneous death or unconsciousness, the defense wounds on the victim's hands plainly demonstrate that he did not lose consciousness swiftly, but rather was painfully aware of what was happening to him. Additionally, a hinge from the handcuffs was removed from the victim's skull, indicating at some point he had placed his hands between the bat and his head in a defensive posture. We find ample evidence of both extreme mental anguish and conscious physical suffering prior to the victim's death to support this aggravating circumstance.

Alverson, 983 P.2d at 515 (footnotes omitted). Additionally, in its mandatory sentence review pursuant to Okla. Stat. tit. 21, § 701.13(c),  the OCCA upheld Alverson's death sentence, specifically noting that the two aggravating circumstances found by the jury were supported by sufficient evidence. Id. at 522. Petitioner argues that the OCCA's conclusion was based upon an unreasonable determination of the facts. However, in light of the presumption of correctness afforded by 28 U.S.C. § 2254(e), the Court must defer to the factual determinations made by the state court absent "clear and convincing evidence" rebutting the presumption. Id. Petitioner has failed to rebut the presumption with the requisite clear and convincing evidence.

Thus, the question before the Court is limited to deciding whether the OCCA's conclusion that the evidence was sufficient constituted an unreasonable application of Supreme Court law. 28 U.S.C. § 2254 (d)(1). The appropriate standard of review is the rational factfinder standard established in Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Lewis v. Jeffers, 497 U.S. 764, 781 (1990). The relevant habeas question under the Jackson standard is to ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the [aggravating circumstance] beyond a reasonable doubt." Jackson, 443 U.S. at 319; Lewis, 497 U.S. at 783 (considerations also apply to federal habeas review of state court's finding of aggravating circumstances). This standard "gives full play to the responsibility

29

of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. The Tenth Circuit has emphasized that, under Jackson, review is "sharply limited" and a court "faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting Wright v. West, 505 U.S. 277, 296-97 (1992)).  Here, the Court must consider whether the OCCA's decision that there was sufficient evidence to support a jury's finding of the HAC aggravator was contrary to or an unreasonable application of Jackson. 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238 (10th Cir. 2003).

In applying the Jackson standard, the Court looks to Oklahoma law to determine the substantive elements of the aggravating circumstance. Brown, 515 F.3d at 1089; Valdez v. Bravo, 373 F.3d 1093, 1097 (10th Cir. 2004). Under Oklahoma law, the HAC aggravator is properly found when the murder was preceded by torture or serious physical abuse. Medlock v. Ward, 200 F.3d 1314, 1321 (10th Cir. 2000). The instructions given to the jury at Petitioner's trial conformed to Oklahoma law, advising the jury that the phrase "especially heinous, atrocious, or cruel" is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse. See O.R. Vol. III at 417.

The OCCA has determined that the torture element requires proof of either great physical anguish or extreme mental cruelty. Berget v. State, 824 P.2d 364, 373 (Okla. Crim. App. 1991). Torture creating extreme mental distress must be the result of intentional acts by the defendant. Id. Physical abuse requires evidence of conscious, physical suffering. Romano v. Gibson, 239 F.3d

1156, 1176 (10th Cir. 2001); see also Powell v. State, 906 P.2d 765, 779-80 (Okla. Crim App. 1995)

(recognizing that it is critical for the State to prove the victim's conscious physical suffering before

death); Spears v. State, 900 P.2d 431, 443 (Okla. Crim. App. 1995). In Powell, the OCCA ruled that:

> To prove a murder was especially heinous, atrocious or cruel, the State must
> introduce competent evidence indicating the victim's death was preceded by torture
> or serious physical abuse, which may include the infliction of either great physical
> anguish or extreme mental cruelty. Perry v. State, 893 P.2d 521, 533-34 (Okl.
> Cr.1995); Booker v. State, 851 P.2d 544, 548 (Okl. Cr.1993); Battenfield v. State,
> 816 P.2d 555, 565 (Okl. Cr.1991), cert. denied, 503 U.S. 943, 112 S.Ct. 1491, 117
> L.Ed.2d 632 (1992). To support a finding of serious physical abuse, the State must
> show the victim endured conscious physical suffering prior to death. Stafford v.
> State, 832 P.2d 20, 23 (Okl. Cr. 1992).
> . . .
> As we stated in Perry, it is critical the State prove the victim consciously suffered
> prior to death. Perry, 893 P.2d at 534 Prosecutors have proved this aggravator by
> introducing evidence the victim suffered numerous defensive wounds indicating that
> the victim was conscious and attempted to fight off her attacker; statements from the
> defendant indicating the victim consciously suffered serious physical abuse or
> extreme mental cruelty prior to death; witness testimony that the victim was alive
> and conscious at the time the physical abuse was inflicted; or medical evidence that
> the victim was conscious during the infliction of serious physical injury.

Powell v. State, 906 P.2d at 779-80.

Additionally, the OCCA has stated that there are no "specific, uniform criteria, applicable

to all murder cases, which would make the application of the 'heinous, atrocious or cruel aggravator'

a mechanical procedure." Robinson v. State, 900 P.2d 389, 401 (Okla. Crim. App. 1995). "Rather,

the examination of the facts of each and every case is necessary in determining whether the

aggravator was proved." Id. While evaluating the particular evidence introduced at Petitioner's trial,

the Court must accept the jury's resolution of the evidence as long as it is within the bounds of

reason. Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993).

Petitioner argues that there was no evidence to support either limiting factor (torture or serious physical abuse) required in the HAC aggravator. Respondent asserts that the evidence reveals that the victim suffered both extreme mental anguish and serious physical abuse.

The evidence in the instant case, when viewed in the light most favorable to the State, supports a finding that the death of Mr. Yost was preceded by conscious suffering and physical abuse. The medical examiner testified that Mr. Yost died of blunt trauma to the head. (Tr. Trans. May 15, 1997 at 57). The videotape of the incident reveals that a struggle took place between the victim and his attackers.  (State's Exhibit # 1).The medical examiner testified that wounds on the victim's hands and fingers were consistent with defensive wounds (Tr. Trans. May 15, 1997 at 39-42, 44), and wounds on one wrist were consistent with evidence of a struggle while the victim was handcuffed. Id. at 34, 37, 54. Defensive wounds on the victim's hands, fingers and wrist plainly demonstrate that he did not lose consciousness swiftly but was aware of what was happening to him. Additionally, a hinge from the handcuffs was removed from the victim's skull indicating he had placed his hands between the bat and his head in a defensive posture. Further, Mr. Yost was bound prior to his death, evidencing he was conscious during part of the attack. See Romano v. Gibson, 239 F.3d 1156, 1177 (10th Cir. 2001) (bound arms and legs were evidence victim was conscious during part of the attack as there would be no need to bind a dead person). In light of the foregoing, this Court concludes there was ample evidence of conscious suffering to fall within Oklahoma's narrowed scope and preserve the application of the heinous, atrocious or cruel aggravating circumstance to this case. See Medlock v. Ward, 200 F.3d 1314, 1322 (10th Cir. 2000). The finding by the jury of the HAC aggravator is rationally supported by the evidence. Jackson, 443 U.S. 307.

32

Accordingly, the OCCA's decision upholding the jury's finding of the HAC aggravator was not unreasonable. Petitioner is not entitled to habeas corpus relief on this issue.

*Sufficiency of evidence of Petitioner's participation in murder*

Petitioner also alleges the sentence of death was improper because the State failed to prove that he himself killed Yost, attempted to kill Yost, or intended the death of Yost. To support his proposition, Petitioner relies on the holdings of the United States Supreme Court in Lockett v. Ohio, 438 U.S. 586, 605 (1978) (finding that "an individualized decision is essential in capital cases"); Enmund v. Florida, 458 U.S. 782, 801 (1982) (noting that culpability must be limited to defendant's participation in the crime); Tison v. Arizona, 481 U.S. 137, 149 (1987) (determining that "a criminal sentence must be directly related to personal culpability of the defendant"); and similar cases regarding personal culpability of defendants.  The OCCA readily disposed of this issue, finding:

> The evidence showed Alverson was a substantial participant in the murder. He actively participated in the initial attack wherein the victim was dragged into the cooler. Alverson came out of the cooler to straighten up store merchandise that he and his cohorts had knocked off the shelves during the attack, then re-entered the cooler. Alverson actively participated in bringing the baseball bat, and arguably the handcuffs, into the cooler. Although Harjo carried the bat, Alverson led the way outside the store to retrieve it and back inside to the cooler. By introducing a dangerous weapon into the robbery, Alverson "created a desperate situation inherently dangerous to human life." Moreover, Alverson was inside the cooler when some of the beating was administered. Accordingly, we find the evidence clearly showed that even if Alverson did not deliver the blows himself, he knew the murder was to take place and actively participated in it.

Alverson, 983 P.2d at 516 (footnotes omitted). Because Tenth Circuit precedent is unclear whether a sufficiency of the evidence claim presents a question of law reviewable under § 2254(d)(1) or a question of fact reviewable under § 2254(d)(2), this Court will consider whether the OCCA's determination was contrary to clearly established federal law or based upon an unreasonable

33

determination of the facts. See, e.g., Boltz v. Mullin, 415 F.3d 1215, 1230 (10th Cir. 2005); Turrentine v. Mullin, 390 F.3d 1181, 1197 (10th Cir. 2004).

In Enmund, the defendant was convicted of felony-murder (the unlawful killing occurring during the perpetration of or in the attempted perpetration of robbery). The sole issue decided by the Court was whether death is a valid penalty under the Eighth and Fourteenth Amendments for one who neither took life, attempted to take life, nor intended to take life. Id. at 787. Enmund was the driver of the getaway car for two others who killed an elderly man and his wife. The United States Supreme Court found that the imposition of the death penalty where "the record supported no more than the inference that Enmund was the person in the car by the side of the road at the time of the killings, waiting to help the robbers escape" was inconsistent with the Eighth and Fourteenth Amendments. Id. Unlike the facts in Enmund, the evidence in Petitioner's trial indicated he helped subdue the victim, helped implement the murder with co-defendant Harjo by retrieving the murder weapon from the car, and stayed in the back room with the victim during the fatal beating. Therefore, this Court finds the facts of this case evidencing Petitioner's participation in the murder are clearly distinguishable from Enmund.

Similarly, in Tison, the defendants were convicted of felony-murder. Again, there was no evidence the Tison brothers took any act intended to kill. The issue, therefore, became whether the Eighth Amendment prohibited a death sentence where the defendants' participation, combined with a reckless indifference to human life, was sufficient to satisfy the culpability requirements of Enmund. Unlike Enmund, the defendants' personal involvement in Tison was described by the Supreme Court as substantial. The Court held that:

> [T]he reckless disregard for human life implicit in knowingly engaging in criminal
> activities known to carry a grave risk of death represents a highly culpable mental

> state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result.

Tison, 481 U.S. at 157-58. As in Tison, Petitioner was actively involved in the felony of robbery and was physically present during the entire sequence of criminal activity culminating in the murder of Yost and the subsequent flight by Petitioner and his co-defendants. Contrary to Alverson's belief, the law does not absolve him of liability for first degree murder simply because he may not have been the person who actually delivered the fatal blows to Mr. Yost. It is clear to this Court that the Enmund/Tison culpability requirement was satisfied. Further, the other cases cited by Petitioner do not provide support to justify habeas relief on this issue.

After a careful review of the records herein, this Court finds the adjudication of this claim by the OCCA was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Further, this Court concludes the evidence relied upon by the OCCA was sufficient to support application of the HAC aggravator to Petitioner. Accordingly, the adjudication of this claim did not involve an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d)(2).  Petitioner is not entitled to relief on this claim.

### *Constitutionality of HAC Aggravator*

Petitioner next challenges the constitutionality of the heinous, atrocious or cruel aggravator found in Okla. Stat. tit. 21, § 701.12(4) as failing to legitimately narrow the class of defendants eligible for the death penalty. Petitioner argues that the HAC aggravator, as applied in Oklahoma, is overbroad and can be applied to any murder.  Respondent counters that the heinous, atrocious or

cruel definition has been adequately narrowed to comply with constitutional standards, and Petitioner's claim is without merit.

On direct appeal Petitioner questioned the constitutionality of the HAC aggravating circumstance applied in his case. The OCCA denied relief, noting that the law in Oklahoma is well settled. The state appellate court declined to revisit the issue. <u>Alverson</u>, 983 P.2d at 516.

Because the constitutionality of aggravating factors is a question of law, Petitioner must demonstrate that the OCCA's decision was contrary to, or involved an unreasonable application of, federal law as established by the United States Supreme Court. <u>See</u> <u>United States v. McCullah</u>, 76 F.3d 1087, 1107 (10th Cir. 1996); 28 U.S.C. § 2254(d)(1). Petitioner has failed to meet this burden. The Tenth Circuit summarized its position on the constitutionality of Oklahoma's heinous, atrocious or cruel aggravator in <u>Workman v. Mullin</u>, 342 F.3d 1100, 1115-116 (10th Cir. 2003), stating:

> We have repeatedly held that Oklahoma's current definition of "especially heinous, atrocious or cruel" aggravating circumstance is not unconstitutionally vague.
>
> Workman acknowledges that the Tenth Circuit has routinely upheld the constitutionality of this aggravating circumstance, <u>see</u>, <u>e.g.</u>, <u>Romano v. Gibson</u>, 239 F.3d 1156, 1176 (10th Cir. 2001); <u>Thomas v. Gibson</u>, 218 F.3d 1213, 1226 (10th Cir. 2000); <u>Medlock v. Ward</u>, 200 F.3d 1314, 1319 (10th Cir. 2000); <u>Moore v. Gibson</u>, 195 F.3d 1152, 1175-76 (10th Cir. 1999); <u>Smallwood v. Gibson</u>, 191 F.3d 1257, 1274 (10th Cir. 1999); <u>Hooks v. Ward</u>, 184 F.3d 1206, 1239-40 (10th Cir. 1999); <u>Foster v. Ward</u>, 182 F.3d 1177, 1194 (10th Cir. 1999); <u>Duvall v. Reynolds</u>, 139 F.3d 768, 793 (10th Cir. 1998). Nevertheless, Workman attempts to find room for his argument that the aggravating circumstance is unconstitutionally vague in snippets of language from our cases such as a line from <u>Thomas</u> expressing doubt about blanket application of Oklahoma's early formulation and Judge Lucero's concurrence in <u>Medlock</u>. <u>See</u> <u>generally</u> <u>Thomas</u>, 218 F.3d at 1229 n.17 ("There exists, at a minimum, a serious constitutional question as to whether an aggravator which makes eligible for the death penalty all murderers who strike more than one blow adequately narrows the class of murderers eligible for the death penalty."); <u>Medlock</u>, 200 F.3d at 1324 ("There must be conscious suffering of more than the brief duration necessarily accompanying virtually all murders. Were this not so, the narrowing construction [that Oklahoma has given the aggravating circumstance]

would not have the discretion-limiting effect required by [the Eighth Amendment].")
(Lucero, J., concurring).

Oklahoma, however, has limited application of the aggravating circumstance to only
those crimes where the death of the victim was preceded by torture of the victim or
serious physical abuse. Stouffer v. State, 742 P.2d 562, 563 (Okla. Crim. App. 1987).
This limitation was included in the jury instructions in Workman's case. ROA
Criminal Appeal, Original Record at 98, Instruction No. 3 penalty phase ("The
phrase 'especially heinous, atrocious, or cruel' is directed to those crimes where the
death of the victim was preceded by torture of the victim or serious physical
abuse."). We have specifically found Oklahoma's new formulation to be
constitutional since this limiting language was enacted. Hatch v. State, 58 F.3d 1447,
1468-69 (10th Cir. 1995); see also Duvall, 139 F.3d at 793.

Workman, 342 F.3d at 1115-116. Tenth Circuit precedent forecloses Petitioner's argument that

Oklahoma's heinous, atrocious or cruel aggravator is unconstitutionally vague. See also Brown, 515

F.3d at 1091. Even Petitioner acknowledges that the Tenth Circuit has consistently rejected "facial

validity" challenges to this aggravator. See Dkt. # 12 at 59.  Habeas relief shall be denied on this

issue.

## IV.     Victim Impact evidence (ground four)

In his fourth ground for relief, Petitioner claims that his rights guaranteed by the Eighth and

Fourteenth Amendments were violated by victim impact evidence introduced during the penalty

phase of his trial. He first argues that the victim impact statements presented by the victim's wife

and mother were unfairly prejudicial. He also claims that victim impact evidence in the Oklahoma

sentencing scheme acts as an improper "super aggravator" and is thus unconstitutional.  The OCCA

denied these claims of error on direct appeal. Alverson, 983 P.2d at 518-19.

*Testimony of Yost family members*

Toward the end of the State's case in the second stage proceedings, the victim's wife, Angela

Yost, and his mother, Alma Dorn, each testified as victim impact witnesses. See Tr. Trans. May 19,

1997 at 76-88. Petitioner asserts that their testimony was unfairly prejudicial and exceeded the limitations established in Cargle v. State, 909 P.2d 806 (Okla. Crim App. 1995); Payne v. Tennessee, 501 U.S. 808 (1991); and United States v. McVeigh, 153 F.3d 1166, 1217 (10th Cir. 1998).

During her testimony, Angela Yost described how her life had changed since her husband's murder, the effect of his death on their two children, how she had enjoyed cooking for her husband, and how much he enjoyed celebrating birthdays and holidays. Tr. Trans. May 19, 1997 at 76-80. The victim's mother, Alma Dorn, explained how her son's death had affected her emotionally, that he never caused any problems as a child or a teenager, that he was excited about his job at QuikTrip because he would be able to pursue his education and goals, that he was a good father, son, and husband, that he was her emotional security, and that he had promised to take care of her in her old age. Id. at 82-86.  Petitioner complains that the references in Ms. Dorn's testimony to her son's childhood and his future plans to take care of her in her old age were unduly prejudicial. He also argues that the testimony of both witnesses caused the jurors to feel overwhelming sympathy for them, thus creating an improper emotional response during sentencing.

The OCCA found the statements of Mrs. Yost and Ms. Dorn were relevant to show the impact of the murder on their lives. Alverson, 983 P.2d at 519. Petitioner has failed to demonstrate how the OCCA's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Federal habeas corpus review of the admission of victim impact evidence is limited to a determination whether the use of the victim statement made the sentencing hearing "so fundamentally unfair as to deny him due process." Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974). Accord, Payne, 501 U.S. at 825. In reviewing the victim

38

impact statements made by Angela Yost and Alma Dorn, this Court does not find the remarks so infected the sentencing proceeding as to render it fundamentally unfair. Accordingly, habeas relief is denied on this issue.

*Constitutionality of victim impact evidence as applied in Oklahoma*

Petitioner next asserts that victim impact evidence in Oklahoma is not relevant to Oklahoma's "death penalty scheme" which requires a balancing test of aggravating and mitigating circumstances.  (Dkt. # 12 at 66). He claims it operates as a non-statutory "super aggravator" resulting in an unconstitutional skewing of the weighing process between aggravating and mitigating circumstances. Id.  This claim was raised on direct appeal. In rejecting Petitioner's arguments, the OCCA stated:

> Alverson further contends that victim impact evidence as a whole negates the narrowing function death penalty procedures are required to provide. He argues it operates as a "superaggravator" that overwhelmed his jury in its function of balancing aggravating and mitigating circumstances. We have consistently rejected this argument. The State is required to prove at least one aggravator beyond a reasonable doubt before the death penalty may be imposed.

> In this case, the trial court specifically instructed the jury that victim impact evidence is not the same as an aggravating circumstance and that they could only consider the aggravating circumstances set forth in the instructions. There is no indication that the jury would not have found the aggravating circumstances but for the victim impact evidence. Accordingly, this proposition is denied.

Alverson, 983 P.2d at 519-20 (footnotes omitted).

If a state chooses to allow the admission of victim impact evidence, the Eighth Amendment erects no *per se* bar. "A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." Payne v. Tennessee, 501 U.S. 808, 827 (1991). In overruling its own previous split decisions in Booth v. Maryland, 482 U.S. 496 (1987) and South

Carolina v. Gathers, 490 U.S. 805 (1989), the Supreme Court observed that, "[A]ssessment of the harm caused by the defendant has long been an important factor in determining the appropriate punishment, and victim impact evidence is simply another method of informing the sentencing authority about such harm." Payne, 501 U.S. at 808. Noting that in most cases, "victim impact evidence serves entirely legitimate purposes," the Payne Court concluded that such statements are "simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by the sentencing authorities." Id. at 825.

In 1992, Oklahoma enacted legislation permitting victim impact evidence. See Okla. Stat. tit. 21, § 701.10(c) (1992)[8] and Okla. Stat. tit. 22, §§ 984, 984.1 (1992).[9] Petitioner does not challenge the constitutionality of the Oklahoma statutes or the admission of victim impact statements *per se*, but asserts that victim impact evidence has no place in Oklahoma's balancing scheme and operates as "irrelevant, improper, non-statutory 'super aggravator.'" See Dkt. # 12 at 66. Petitioner's concerns about the jury's possible misuse of victim impact evidence in its deliberations is based upon mere speculation.

Petitioner's jury was fully instructed as to its duties for determining punishment in the second stage proceedings (O.R. Vol. III at 409-31). In arriving at a determination of punishment the

---

[8] Section 701.10(c) of Title 22 provides, "In the sentencing proceeding, . . . the state may introduce evidence about the victim and about the impact of the murder on the family of the victim."

[9] Section 984 of title 22 in effect at the time of Petitioner's crime and trial defines "victim impact statements" as, "information about the financial, emotional, psychological, and physical effects of a violent crime on a victim or member of their immediate family, and includes information about the victim, circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion of a recommended sentence." Per section 984.1, copies of the victim impact statement are to be made available to the parties.

jury was instructed to first determine whether any one or more of the three aggravating circumstances existed beyond a reasonable doubt (Instruction No. 6, id. at 416). Jurors were advised they could "consider only those aggravating circumstances set forth in these instructions." (Instruction No. 10, id. at 420). Only after unanimously finding that one or more of the aggravating circumstances existed beyond a reasonable doubt could the jury even consider imposing a death sentence. Id. The jury is presumed to follow its instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)). Petitioner's assumption that his jury considered the victim impact evidence to be another aggravating circumstance ignores the plain language of the instructions given at trial, which the jury is presumed to follow. Petitioner's jury found the existence of two aggravating circumstances beyond a reasonable doubt before recommending the death sentence for Petitioner.

Additionally, the Supreme Court has determined that aggravating circumstances give effect to constitutional protections by narrowing the class of death eligible murders, and the introduction of victim impact evidence does not eliminate that effect. Tuilaepa v. California, 512 U.S. 967, 979-80 (1994). "[T]he sentencer may be given unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty." Id. (internal quotations omitted). "A capital sentencer need not be instructed how to weigh any particular fact in the capital sentencing decision." Id. at 979. This Court finds that the use of victim impact evidence, in general under Oklahoma law and specifically in Petitioner's trial, did not deprive Petitioner of his Eighth Amendment or Fourteenth Amendment rights. The OCCA's decision on this issue in Alverson's direct appeal was not an unreasonable

application of clearly established federal law as determined by the Supreme Court. Habeas relief is denied on this issue.

## V.      Ineffective assistance of counsel (ground five)

In ground five, Petitioner presents three claims of ineffective assistance of trial counsel. First, he complains that trial counsel conceded Alverson's guilt without consent. Second, he claims that trial counsel failed to ensure that the pre-trial hearings on his request for a mental health expert were conducted *ex parte*. Last, he contends that trial counsel failed to investigate Alverson's history of head injuries. The OCCA rejected the first and third claims on direct appeal. The second claim was raised for the first time in post-conviction proceedings where relief was denied on procedural grounds. Petitioner also asserts that his appellate counsel was ineffective for failing to raise an Ake claim on direct appeal. The OCCA denied this claim in post-conviction proceedings.

Petitioner is not entitled to habeas corpus relief on his claims of ineffective assistance of counsel unless he establishes that the OCCA's adjudication of the claims was an unreasonable application of Supreme Court precedent. Petitioner must demonstrate that his counsel's performance was deficient and that the deficient performance was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). Petitioner must establish the first prong by showing that his counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover,

review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.  To establish the second prong, Petitioner must show that this deficient performance prejudiced the defense to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Houchin v. Zavaras, 107 F.3d 1465, 1471 (10th Cir. 1997) (quoting Strickland, 466 U.S. at 694). Failure to establish either prong of the Strickland standard will result in denial of relief.  Strickland, 466 U.S. at 697.

<em>Claim that trial counsel conceded guilt</em>

Petitioner alleges that his trial attorney was constitutionally ineffective because he conceded Petitioner's guilt when addressing the jury. In rejecting this claim on direct appeal, the OCCA found that Petitioner's comments to the jury did not render him ineffective:

> Alverson contends first that his attorney was ineffective because he stated during voir dire, "And I anticipate, based on the evidence, that you will be in a second stage, looking at punishment." This was asked in the context of exploring a potential juror's feelings toward the death penalty. Throughout the trial, counsel's strategy was to argue Alverson was less culpable than the others in Yost's murder. Given the overwhelming evidence of guilt, including the store surveillance tape and Alverson's confession, counsel's sound trial strategy of attempting damage control regarding punishment did not render him ineffective.

Alverson, 583 P.2d at 510 (footnote citation to transcript omitted). Respondent asserts that the OCCA's decision was not an unreasonable application of Supreme Court law because Petitioner cannot demonstrate prejudice under the Strickland standard.

43

Petitioner points to several comments made by trial counsel which allegedly demonstrate that he was conceding Petitioner's guilt. The first statement challenged by Petitioner was made by trial counsel during the *voir dire* of potential jurors:

> Now, I anticipate -- and I'm not one of those lawyers that some of you talk about -- I'm here to say that there is an indication, based on the evidence, that what we've all gone through, all the exhibits, we know what the evidence is going to be, that there's going to be an indication that Billy Alverson was at this location when this happened. I'm going to straight out be honest with you.

Tr. Trans. Vol. II at 143. Later, his attorney told prospective juror Smith, "I anticipate that based on the evidence that there is an involvement of Billy in this thing." Id. at 227. However, he went on to say, "[Y]ou are still going to require the State to prove Billy guilty beyond a reasonable doubt; is that correct?" Id.  These challenged statements made during the *voir dire* process do not appear to be a concession of guilt of the type recognized in other cases. See e.g., United States v. Swanson, 943 F.2d 1070, 1071, 1074 (9th Cir.1991) (addressing defense counsel's statements during closing argument that there was "no reasonable doubt" that his client was the perpetrator and that there was "no reasonable doubt" as to an essential element of the offense charged); Francis v. Spraggins, 720 F.2d 1190, 1193-94 & 1193 n.7 (11th Cir.1983) (addressing defense counsel's statement during closing argument in the guilt phase of a capital trial that "I think he committed the crime of murder"); Jones v. State, 110 Nev. 730, 877 P.2d 1052, 1055-57 (1994) (addressing statement during closing argument that "the evidence shows beyond a reasonable doubt that the defendant" was the perpetrator); State v. Harbison, 315 N.C. 175, 337 S.E.2d 504, 506-08 (1985) (addressing statement by defense counsel that "I don't feel that [the defendant] should be found innocent"). Although counsel in this case conceded Alverson's presence at the crime scene and some involvement by Alverson, the statements were consistent with a defense strategy focusing on the extent of

44

Petitioner's involvement. "It is a time-honored strategy of advocates to cede evidence that cannot be rebutted so that counsel has credibility to challenge evidence where challenge is fruitful." United States v. Dago, 441 F.3d 1238, 1252 (10th Cir. 2006).

Petitioner also objects to certain comments made by trial counsel in his first stage opening statement, including his opinion that "this is a case about punishment." Tr. Trans. Vol. V at 19. Finally, Petitioner draws the Court's attention to his attorney's remarks during second stage closing argument that Alverson was "legally guilty" and concludes that the record clearly demonstrates that counsel conceded Alverson's guilt to both armed robbery and first degree murder. See Dkt. # 12 at 76.

An attorney may abandon his duty of loyalty to a client when he "adopts and acts upon a belief that his client should be convicted and 'fails to function in any meaningful sense as the Government's adversary.'" Osborn v. Shillinger, 861 F.2d 612, 625 (10th Cir. 1988) (quoting United States v. Cronic, 466 U.S. 648, 666 (1984)). "'A defense attorney who abandons his duty of loyalty to his client and effectively joins the state in an effort to attain a conviction or death sentence suffers from an obvious conflict of interest,' and thereby fails to provide effective assistance." Davis v. Executive Dir. of Dep't of Corr., 100 F.3d 750, 756 (10th Cir. 1996) (quoting Osborn, 861 F.2d at 626). The Court must analyze trial counsel's statements and determine whether they resulted in an unconstitutional abandonment of loyalty to Alverson under the two-prong standard established in Strickland.

It is not necessary for this Court to evaluate trial counsel's deficiency under the first prong of Strickland if it easier to resolve the ineffectiveness issue by addressing the prejudice prong. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that

course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." Strickland, 466 U.S. at 697. Thus, the Court will examine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

To the extent that Petitioner suggests prejudice should be presumed from his trial counsel's statements (Dkt. # 12 at 74, 77), the Court finds that this case is not one of the "narrow class of cases that prejudice will be presumed." Davis, 100 F.3d at 756 n.3. Therefore, unless Petitioner "can show how specific errors of counsel undermined the reliability of the finding of guilt," relief must be denied. Id. (quoting Cronic, 466 U.S. at 659 n.26). Petitioner has failed to meet this burden.

Upon review of the trial record, exhibits, and the briefs filed herein, this Court finds that Petitioner has failed to demonstrate that he was prejudiced by trial counsel's comments sufficient to prove the second prong of the Strickland test. The trial transcript and original record reveal overwhelming evidence of Petitioner's guilt on both the first degree murder count and the robbery with a dangerous weapon count. That evidence includes a surveillance tape showing active participation by Petitioner in the crimes for which he was convicted. The statements by Petitioner's trial counsel did not alter the likely outcome of the first stage of the trial. The Court does not find that counsel's statements amounted to objectively unreasonable representation. As noted by the OCCA, his statements could easily be viewed as a strategic choice to garner respect for counsel's honesty and bolster his credibility during second stage proceedings. See, e.g., Turrentine v. Mullin, 390 F.3d 1181, 1260 (2004). Even if trial counsel's performance had been below the objective standard of reasonableness, "no reasonable probability exists that the outcome" of the first stage of

46

the trial would have been different. Under Strickland, Petitioner was not prejudiced by the comments characterized by Alverson as a concession of guilt.

Having found that Petitioner failed to demonstrate that his trial counsel rendered ineffective assistance by unnecessarily conceding Petitioner's guilt, this Court finds that the OCCA's decision was not an unreasonable application of Supreme Court law. Nor was it based on an unreasonable determination of facts in light of the evidence presented.  Petitioner failed to meet his burden under 28 U.S.C. § 2254(d).  Accordingly, habeas relief on this issue is denied.

*Trial counsel's failures in Ake hearings*

Petitioner next claims that his trial counsel was constitutionally deficient because he failed to ensure that the pre-trial hearings on his requests for mental health experts were conducted *ex parte*, as required by Ake. In response, Respondent argues that this claim is procedurally barred because it was not raised on direct appeal.  Rejecting this claim on post-conviction appeal, the OCCA found as follows:

> In Proposition III, Alverson claims both his trial and his appellate counsel were ineffective. Ineffective assistance of trial counsel claims will only be considered on post-conviction "if they are based upon facts which were not available to the applicant's direct appeal attorney and thus could not have been made part of the direct appeal record."  Alverson claims trial counsel was ineffective for failing to ensure that hearings conducted to determine whether he was entitled to an *Ake* expert were held *ex parte*. This claim could easily have been raised on direct appeal as it does not require fact finding outside the direct appeal record. It is therefore barred by procedural default.

See Order Denying Application for Post-Conviction Relief in OCCA Case No. PC-98-1192.

The doctrine of procedural bar prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds, unless a petitioner "demonstrate[s] cause for the default and

actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 724 (1991); see also Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995); Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991).   "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985.  A finding of procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority of cases.'"  Id. (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir.1991)).

Applying the principles of procedural bar to this case, the Court concludes that Alverson's ineffective assistance of trial counsel claim for failing to ensure an *ex parte* Ake hearing is procedurally barred. The OCCA's procedural bar, based on Petitioner's failure to raise the omitted claims on direct appeal, is an "independent" state ground because state law provided "the exclusive basis for the state court's holding." Maes, 46 F.3d at 985.

As to the adequacy of the state's procedural bar, however, the Tenth Circuit Court of Appeals has recognized that countervailing concerns may justify an exception to the general rule of procedural default where the defaulted claim is ineffective assistance of trial counsel. Brecheen v. Reynolds, 41 F.3d 1343, 1363 (10th Cir. 1994) (citing Kimmelman v. Morrison, 477 U.S. 365 (1986)).  The unique concerns are "dictated by the interplay of two factors: the need for additional fact-finding, along with the need to permit the petitioner to consult with separate counsel on appeal in order to obtain an objective assessment as to trial counsel's performance." Id. at 1364 (citing Osborn v. Shillinger, 861 F.2d 612, 623 (10th Cir. 1988)).  The Tenth Circuit explicitly narrowed the circumstances requiring imposition of a procedural bar on ineffective assistance of counsel

claims first raised collaterally in <u>English v. Cody</u>, 146 F.3d 1257 (10th Cir. 1998).  In <u>English</u>, the

Circuit Court concluded that:

> <u>Kimmelman</u>, <u>Osborn</u>, and <u>Brecheen</u> indicate that the Oklahoma bar will apply in
> those limited cases meeting the following two conditions: trial and appellate counsel
> differ; and the ineffectiveness claim can be resolved upon the trial record alone.  All
> other ineffectiveness claims are procedurally barred only if Oklahoma's special
> appellate remand rule for ineffectiveness claims is adequately and evenhandedly
> applied.

<u>Id.</u> at 1264 (citation omitted).

After reviewing the record in the instant case in light of the factors identified in <u>English</u>, the

Court concludes that the procedural bar imposed by the state courts on this portion of Alverson's

ineffective assistance of trial counsel claim is based on grounds adequate to preclude federal habeas

review.  Petitioner was represented at trial by James Fransein. On appeal, he was represented by

Stuart Southerland.  For purposes of the first requirement identified in <u>English</u>, the Court finds that

Alverson had the opportunity to confer with separate counsel at trial and on appeal.  The second

<u>English</u> factor requires that the claim could have been resolved either "upon the trial record alone"

or after adequately developing a factual record through some other procedural mechanism.  <u>Id.</u> at

1263-64.  Alverson's claim in this case could have been resolved upon the trial record alone. Even

if his claim could not be resolved on the trial record alone, Alverson has not alleged that the

Oklahoma remand procedure, as provided by Rule 3.11 of the *Rules of the Oklahoma Court of*

*Criminal Appeals*, was inadequate to allow him to supplement the record on his ineffective

assistance of counsel claim.  <u>See</u> <u>Hooks v. Ward</u>, 184 F.3d 1206, 1217 (10th Cir. 1999) (once the

state pleads the affirmative defense of an independent and adequate state procedural bar, the burden

shifts to the petitioner to make specific allegations as to the inadequacy of the state procedure). As

a result, he cannot demonstrate that Oklahoma's procedural bar is inadequate and his claim of ineffective assistance of trial counsel is procedurally barred.

Because of Petitioner's procedural default, this Court may not consider the defaulted claim unless he is able to show "cause and prejudice" for the default, or demonstrate that a fundamental miscarriage of justice would result if his claim is not considered.  See Coleman, 501 U.S. at 750; Demarest v. Price, 130 F.3d 922, 941-42 (10th Cir. 1997).  The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials.  Id.  As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains."  United States v. Frady, 456 U.S. 152, 168 (1982).  A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted.  McCleskey v. Zant, 499 U.S. 467, 494 (1991).

Petitioner asserts that appellate counsel provided ineffective assistance in failing to raise a claim that his trial counsel was ineffective for not ensuring that the pretrial Ake motions were heard by the trial court ex parte.  See Dkt. # 12. It is well established that in certain circumstances, appellate counsel's ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural default. Carrier, 477 U.S. at 488-89. However, the assistance provided by appellate counsel must rise to the level of a constitutional violation. Id. Furthermore, the ineffective assistance of appellate counsel claim asserted as "cause" must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. Id. at 489.

In this case, Alverson did assert a claim of ineffective assistance of appellate counsel in his post-conviction appeal. See Dkt. # 8, Ex. E. However, he did not raise the specific claim identified as "cause" in this claim. In his reply to Respondent's response, Petitioner contends that , "Appellate counsel's representation was specifically challenged on post-conviction for failing to raise the Ake issue 'raised in proposition one of the application' which was asserted to be a winning claim." See Dkt. # 15 at 10. As argued by Petitioner, proposition one of the state post-conviction application included a claim that the trial court's failure to hold the Ake hearings *ex parte* resulted in numerous constitutional violations. Noticeably absent in proposition one, however, is a claim that trial counsel was ineffective for failing to ensure that the Ake hearings were held *ex parte*. Therefore, Petitioner's claim of ineffective assistance of appellate counsel cannot constitute "cause" sufficient to excuse his procedural default because it was not presented to the state courts as a separate claim for review.[10]  Carrier, 477 U.S. at 488-89.

Petitioner's only other means of gaining federal habeas review of his defaulted claim is a claim of actual innocence under the fundamental miscarriage of justice exception.  Herrera v. Collins, 506 U.S. 390, 403-404 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-341 (1992); see also Schlup v. Delo, 513 U.S. 298 (1995).  To meet this test, a criminal defendant must make a colorable showing of factual innocence.  Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera,

---

[10] Even if the Petitioner had presented a claim to the state courts that appellate counsel was ineffective for failing to argue ineffective assistance of trial counsel due to his failure to ensure an *ex parte* Ake hearing, the claim would lack merit. Petitioner has cited no clearly established federal law under which he was constitutionally entitled to an *ex parte* hearing. Ake does not stand for this proposition. In Ake, 470 U.S. 68, the Supreme Court recognized the need for an *ex parte* hearing, but did not hold that a hearing is constitutionally required to be held *ex parte*. Clearly established federal law consists of the "holdings, as opposed to the dicta of [the Supreme Court's] decisions." Williams v. Taylor, 529 U.S. 362, 412 (2000).

506 U.S. at 404). Under <u>Schlup</u>, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." <u>Schlup</u>, 513 U.S. at 316.  Alverson has the burden of persuading this Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." <u>Id.</u> at 329.  The fundamental miscarriage of justice exception is intended "for those rare situations 'where the State has convicted the wrong person of the crime. . . . [Or where] it is evident that the law has made a mistake.'" <u>Klein v. Neal</u>, 45 F.3d 1395, 1400 (10th Cir. 1995) (quoting <u>Sawyer v. Whitley</u>, 505 U.S. 333, 340 (1992)). Petitioner does not claim that he is innocent of the events that resulted in the killing Mr. Yost and the robbery at the QuikTrip. Rather, he claims that he is not guilty of those crimes because of his limited participation and because of his possible mental health issues. However, those arguments go to legal innocence, as opposed to factual innocence. <u>Id.</u>; <u>see also</u> <u>Brecheen v. Reynolds</u>, 41 F.3d 1343, 1357 (10th Cir. 1994). The fundamental miscarriage of justice exception is inapplicable in this case.

Accordingly, because Alverson has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his defaulted claim is not considered, the Court concludes that it is procedurally barred from considering the merits of Alverson's defaulted claim. <u>Coleman</u>, 501 U.S. at 724. Habeas corpus relief on this ground shall be denied.

*Trial counsel failed to investigate Alverson's head injuries*

As his third claim of ineffective assistance of trial counsel, Petitioner contends that his trial attorney failed to adequately investigate Petitioner's childhood head injuries. On direct appeal, the OCCA found this issue lacked merit.

52

> Finally, Alverson takes issue with counsel's failure to investigate alleged head injuries Alverson had received as a child. Counsel did request funds to hire an expert to look into this issue, which was properly denied by the trial court. Because Alverson has presented no evidence to support his contention that ordinary injuries he received as a child resulted in inorganic brain damage, we dispose of this claim on a lack of prejudice as well.

Alverson, 983 P. 2d at 511. Respondent contends that the OCCA's resolution of this issue was correct.

Both the Supreme Court and the Tenth Circuit Court of Appeals "have placed increasing emphasis on the obligation of defense counsel in capital cases to develop and present mitigating evidence in the penalty phase" of a trial. Wilson v. Sirmons[11], 536 F.3d 1064, 1074 (10th Cir. 2008). The Wilson court noted that:

> The Supreme Court, however, has made clear that the investigation and presentation of *some* mitigating evidence is not sufficient to meet the constitutional standard, if counsel fails to investigate reasonably available sources or neglects to present mitigating evidence without a strong strategic reason. Wiggins v. Smith, 539 U.S. 510, 527, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); American Bar Association Guideline for the Appointment and Performance of Counsel in Death Penalty Cases 11.8.6 (1989) [hereinafter "ABA Guidelines"]. As we said in Romano v. Gibson, 239 F.3d 1156, 1180 (10th Cir. 2001): "The sentencing stage is the most critical phase of a death penalty case. Any competent counsel knows the importance of thoroughly investigating and presenting mitigating evidence."

Id. In Wilson, the petitioner raised two objections to his attorney's pre-trial preparation. First, he complained that his trial counsel failed to engage an expert until shortly before trial. Second, the attorney failed to supply the expert with readily available relevant information. Wilson also complained that his trial attorney failed to present the expert's actual diagnoses to the jury. Id. at 1084.   The Circuit Court concluded that trial counsel's performance in the Wilson case was

---

[11] Michael Wilson was one of Alverson's co-defendants. Wilson was tried in a dual jury trial with co-defendant Darwin Brown.

constitutionally deficient because it "involved inadequate preparation and presentation of the expert witness, as well as delay in engagement." Id. at 1086.

In this case, the preparation and investigation by Petitioner's trial counsel differed substantially from that performed by Wilson's attorney. As noted in the earlier section dealing with Petitioner's ground one claim, his counsel made four requests to the trial court for funding for a mental health expert. Further, although Petitioner complains that his attorney did not adequately investigate his childhood head injuries, Petitioner does not explain what childhood head injuries he is referring to or how further investigation would have altered the outcome of the trial. The Court finds that the OCCA's factual conclusion that, "Alverson has presented no evidence to support his contention that ordinary injuries he received as a child resulted in inorganic brain damage" was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(2). Nor was the OCCA's finding that Petitioner was not prejudiced by his counsel's alleged failure to investigate contrary to or an unreasonable application of Supreme Court law. 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to habeas relief on this issue.

### *Ineffective assistance of appellate counsel*

Finally, Petitioner argues that his appellate counsel was ineffective for adequately presenting the Ake claim on direct appeal. Specifically, Petitioner alleges that his appellate counsel "had a duty to investigate and supplement the record with extra-record material demonstrating that Mr. Alverson suffered from organic brain damage and was prejudiced by the lack of expert assistance." See Dkt. # 12 at 82. The OCCA rejected Petitioner's ineffective assistance of appellate counsel claim in its order denying post-conviction relief, finding that, "Alverson does not plead facts or law showing

54

why counsel's omission amounts to deficient performance, he does not establish that counsel breached any duties owed him, and he has not shown counsel's judgment to have been unreasonable under the circumstances or to have fallen outside the wide range of professional assistance." <u>See</u> Order Denying Application for Post-Conviction Relief in OCCA Case No. PC-98-1182.

In evaluating Petitioner's claim of ineffective assistance of appellate counsel as raised in the instant action, this Court shall apply the <u>Strickland</u> two-pronged standard used for claims of ineffective assistance of trial counsel. <u>See</u> <u>United States v. Cook</u>, 45 F.3d 388, 392 (10th Cir.1995). As noted earlier, the <u>Strickland</u> test requires a showing of both deficient performance by counsel and prejudice to Petitioner as a result of the deficient performance. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. <u>Hawkins v. Hannigan</u>, 185 F.3d 1146, 1152 (10th Cir. 1999). If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance. <u>Id.</u>; <u>see also</u> <u>Parker v. Champion</u>, 148 F.3d 1219, 1221 (10th Cir.1998) (citing <u>Cook</u>, 45 F.3d at 392-93). If the issue has merit, the Court then must determine whether appellate counsel's failure to raise the claim on direct appeal was deficient and prejudicial. <u>Hawkins</u>, 185 F.3d at 1152; <u>see also</u> <u>Cook</u>, 45 F.3d at 394.

The Court has previously examined the merits of Petitioner's <u>Ake</u> claim in its resolution of ground one above and concluded that Petitioner was not prejudiced by the trial court's decisions regarding funding of a mental health expert pursuant to <u>Ake</u>. Thus, his appellate counsel cannot be constitutionally ineffective for failing to further investigate and present the <u>Ake</u> issue on direct appeal. Relief shall be denied on Alverson's ineffective assistance of appellate counsel claim.

**VI.     Warrantless arrest (ground six)**

In his sixth claim for relief, Petitioner argues that his arrest on February 26, 1995, was illegal and that the introduction of evidence obtained as the result of his arrest violated the Fourth, Eighth and Fourteenth Amendments.  The claim is exhausted because it was raised in Petitioner's direct appeal. In response to the petition, Respondent argues that Petitioner's request for habeas relief on this issue is foreclosed by Stone v. Powell, 428 U.S. 465 (1976).

*Fourth Amendment*

The Court need not belabor its discussion of the merits of Petitioner's request for  habeas corpus relief on this issue because the state courts granted Petitioner a full and fair opportunity to litigate his claim premised on the Fourth Amendment.  In Stone v. Powell, 428 U.S. 465, 494 (1976), the Supreme Court stated that where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial. Although Stone may not have been a capital case itself, the Tenth Circuit has applied Stone to capital cases. See, e.g., Smallwood v. Gibson, 191 F.3d 1257, 1265 (10th Cir. 1999); Cannon v. Gibson, 259 F.3d 1253, 1261-64 (10th Cir. 2001).  The Circuit Court has reiterated that a federal habeas corpus court need not address a Fourth Amendment question as long as the state court has given the petitioner a full and fair opportunity for a hearing on the issue. Smallwood, 191 F.3d at 1265; Miranda v. Cooper, 967 F.2d 392, 400-01 (10th Cir. 1992); Gamble v. State, 583 F.2d 1161, 1165 (10th Cir. 1978).  Thus, the threshold question for this Court is whether Petitioner was provided with an opportunity for full and fair litigation of his Fourth Amendment claim within the

56

meaning of <u>Stone</u>. <u>Gamble</u>, 583 F.2d at 1164. If the state court failed to "extend an opportunity for full and fair consideration of Fourth Amendment claims" this Court must conduct an evidentiary hearing, unless the facts are not in dispute. <u>Miranda v. Cooper</u>, 967 F.2d 392, 401 (10th Cir. 1992).[12]

In <u>Gamble</u>, the Tenth Circuit noted that "[a]lthough <u>Stone</u> announced a verbal standard, it failed to clothe the words 'opportunity for full and fair litigation' with any precise meaning." <u>Gamble</u>, 583 F.2d at 1164. As a result, the Tenth Circuit constructed a definition for that phrase:

> "Opportunity for full and fair consideration" includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim. It also includes the full and fair evidentiary hearing contemplated by <u>Townsend</u>.[13] Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards. Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully refuses to apply the correct and controlling constitutional standards. Deference to state court consideration of Fourth Amendment claims does not require federal blindness to a state court's wilful refusal to apply the appropriate constitutional standard.

<u>Gamble</u>, 583 F.2d at 1165 (footnotes omitted). The definition was further explained the next year in <u>Sanders v. Oliver</u>, 611 F.2d 804 (10th Cir. 1979). In <u>Sanders</u>, the Tenth Circuit held that, "'Opportunity' includes procedural opportunity to raise a claim, and it includes a full and fair hearing." <u>Id.</u> at 808.

In this case, the record demonstrates that Petitioner was afforded the opportunity in the state courts to fully, fairly, and adequately challenge the admissibility of the evidence in question.  On

---

[12] Although <u>Miranda</u> is a pre-AEDPA case, the Court notes that the Tenth Circuit Court of Appeals has continued to apply it and its de novo review to post-AEDPA habeas cases presenting Fourth Amendment claims. <u>See</u>, <u>e.g.</u>, <u>Cappelli v. Zavaras</u>, 249 Fed. Appx. 52 (10th Cir. 2007) (unpublished).

[13] <u>Townsend v. Sain</u>, 372 U.S. 293 (1963), *overruled* on other grounds by <u>Keeney v. Tamayo-Reyes</u>, 504 U.S. 1 (1992).

February 27, 1996, Petitioner filed an amended motion to suppress confession as fruit of an unlawful arrest (O.R. Vol. I at 107).  The trial court heard arguments on Petitioner's motion during pretrial hearing proceedings (see Trans. of Hr'g held October 30, 1996, at 92-163). After hearing the evidence and considering counsel's arguments, the trial judge denied the motion. Id. at 163. Petitioner then raised his Fourth Amendment claims on direct appeal (see Brief of Appellant in OCCA Case No. F-97-1018 at 3-16). The OCCA throughly considered the facts underlying Petitioner's claim, but found no error. Alverson, 983 P.2d at 507-08.

Based on the record, the Court concludes that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in the state courts.  As a result, this Court is precluded from considering the Fourth Amendment issues raised in Petitioner's application for a writ of habeas corpus based on Stone v. Powell, 428 U.S. 465, 494 (1976); see also Gamble v. State, 583 F.2d 1161, 1165 (10th Cir. 1978) (opportunity for full and fair litigation in state court under Stone v. Powell includes opportunity to raise Fourth Amendment claim, full and fair evidentiary hearing, and recognition and application of correct Fourth Amendment standards).   This Court is convinced that the state provided, and Petitioner received, an opportunity to litigate fully and fairly his Fourth Amendment claim. For that reason, Petitioner is not entitled to habeas corpus relief on his sixth proposition of error claim insofar as he argues a violation of his constitutional rights under the Fourth Amendment.

### Eighth and Fourteenth Amendments

Petitioner's summary statement preceding the substantive argument supporting his sixth claim states that the "introduction of evidence obtained as the result of Mr. Alverson's warrantless arrest made without probable cause violated the Fourth, Eighth and Fourteenth Amendments to the

United States Constitution." See Dkt. # 12 at 83. Petitioner, however, fails to present any factual or legal argument to support the vague and conclusory reference to violations of the Eighth and Fourteenth Amendments. The Court will not assume the role of advocate, and finds that Petitioner has not demonstrated that he is entitled to habeas corpus relief on his ground six claim insofar as he alleges violations of the Eighth and Fourteenth Amendments.

## VII.    Cumulative error (ground seven)

In his seventh ground for relief, Petitioner claims that in the event any individual error in his case is deemed insufficient to warrant relief, the accumulation of errors deprived him of a fundamentally fair trial. Dkt. # 12 at 87. The OCCA considered his claim in Proposition XVI of Petitioner's direct appeal, and held that, "[W]here there is no individual error there can be no reversal for cumulative error." Alverson, 983 P.2d at 520.

The Tenth Circuit Court of Appeals has repeatedly held that cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing U.S. v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990). Having found only one constitutional error (ground one), which the Court found to be harmless, there is no basis for a cumulative error analysis. Petitioner is not entitled to relief on this ground.

## VIII.   Evidentiary hearing (ground eight)

In his request for relief (Dkt. # 12 at 89-90) Petitioner seeks an evidentiary hearing "to provide the factual support for his claims." More specifically, he argues that he needs an evidentiary hearing to support his claims of ineffective assistance of counsel. Id. at 91. As the disposition of Petitioner's habeas corpus petition does not require reference to any materials beyond those that are

available and currently before the Court, this Court finds that there is no need for an evidentiary hearing in this case. There are no disputed factual questions remaining that could possibly entitle Petitioner to habeas corpus relief. Petitioner has failed to demonstrate the need for an evidentiary hearing under either 28 U.S.C. § 2254(e)(2) or any other governing principle of law. Michael Williams v. Taylor, 529 U.S. 420 (2000). Accordingly, Petitioner's request for an evidentiary hearing is denied.

## CONCLUSION

After a complete review of the transcripts, trial record, appellate record, briefs filed by the Petitioner and Respondent, and the applicable law, the Court finds Petitioner's request for relief in his Amended Petition for a Writ of Habeas Corpus (Dkt. #12) to be without merit. Accordingly, habeas relief on all grounds is denied.

**ACCORDINGLY IT IS HEREBY ORDERED THAT**:

1. Marty Sirmons is substituted for Gary Gibson as the party Respondent and the **Court Clerk is directed** to note such substitution on the record.

2. Petitioner's request for habeas relief (Dkt. ## 11, 12) is **denied**.

Dated this 5th day of December, 2008.

_____
TERENCE KERN
United States District Judge